## WILLIAMS & PATTEE v. JACOB LOUIS.

LICENSE; WHOLESALE LIQUOR-DEALER; *Sales on Credit; Effect of License.* Where a wholesale liquor-dealer obtains a license signed by the mayor, clerk and treasurer of a city of the second class, authorizing him to sell intoxicating liquors at wholesale in said city, and he afterward in pursuance thereof sells intoxicating liquors at wholesale, *held* in an action brought by the vendor of such liquors against the vendee for the price of the liquors—

1st, That the license, if granted by the city council of said city specially to the wholesale dealer, is valid.

2d, That in the absence of anything to the contrary it will be presumed that the license was regularly granted and issued.

3d, That it is not necessary that the license should be issued to some person who is actually a grocer, a dramshop-keeper, or a tavern-keeper, in order to be valid.

4th, That the license need not upon its face and in direct terms purport to be a grocery license, a dramshop license, or a tavern license; but if it clearly appears upon its face that it is a license to sell intoxicating liquors, it is sufficient.

5th, That being issued as a license to sell intoxicating liquors at wholesale and not at retail, does not invalidate the license as a license to sell at wholesale.

*Error from Anderson District Court.*

ACTION by *Louis* to recover the balance due on account of $158 for brandy, wine, whisky and gin sold to *Williams & Pattee*, on which defendants had paid $55. Defendants made a general denial, and sought to recover back the $55 paid by them. The liquors were sold at the city of Ottawa, in Franklin county, where *Louis* was doing business. The action was commenced before a justice of the peace in Anderson county, and removed to the district court by appeal, where the action was tried at the September Term 1873. Judgment for plaintiff for amount claimed, and defendants bring the case here. No briefs on file.

*J. J. & D. W. Hoffman,* for plaintiffs in error.

*H. B. Hughbanks,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Jacob Louis against Williams & Pattee on an account for liquors and other articles sold by him to them. The defense to the action is, that Louis sold said liquors in violation of law, having no legal license therefor, and therefore that he cannot recover. Section 3 of the act concerning the sale of intoxicating liquors, commonly called the Dramshop Act, makes it unlawful for any person to sell any intoxicating liquor "without taking out and having a license as grocer, dramshop-keeper or tavern-keeper." (Gen. Stat., 400, § 3.) Sections 1 and 2 of the same act provide that the license shall be granted by the city council of any incorporated town or city where the establishment for the sale of such liquors is located in such town or city, and by the county commissioners where such establishment is located elsewhere. Section 47 of the second-class-city act of 1872 provides among other things that, "The city council shall have exclusive authority to levy and collect a license tax on * * * grocers, * * * dramshops, saloons, liquor-sellers," etc. (Laws of 1872, p. 206, § 17.) And it is not necessary that a person who desires to sell intoxicating liquors in an incorporated town or city should have a license therefor from the county board, but it is sufficient if he has a license from the council of such town or city. (*The State v. Pitman*, 10 Kas., 593; *City of Emporia v. Volmer*, 12 Kas., 633.) The liquor in the present case was sold in the city of Ottawa, a city of the second class. An ordinance of said city authorized the city council thereof to grant licenses "to sell intoxicating liquors in quantities of not less than one gallon, or in packages as bought and sold in wholesale markets." And Louis at the time he sold said liquors had a license signed by the mayor, the clerk and the treasurer of said city, authorizing him "to sell intoxicating liquors at wholesale in quantities of not less than one gallon or in packages as bought and sold in wholesale markets." The plaintiff below introduced all the evidence that was

introduced. The defendants below did not even attempt to introduce any evidence. It does not appear from the record that Mr. Louis ever sold any liquor in violation of his license, or outside thereof. It does not appear that he ever sold less than one gallon of liquor at a time, or that he ever broke an original package, as he purchased such package at wholesale in the market. The only question then is, whether his license is valid or not. We think that *prima facie* it is valid. Its validity however depends as we think upon whether it was granted *by the city council specially to him.* But as the ordinance authorized the *city council* to grant licenses, and authorized no one else to do so, and as this license was signed by three of the principal officers of the city, it will be presumed, in the absence of anything to the contrary, that all the officers did their duty, and therefore that the license was granted by the city council, and that it was granted by them in special and express terms to Louis. After it was shown that Louis had a license to sell liquor, signed by the principal officers of the city of Ottawa, if the defendants then claimed that there was any irregularity in the granting or the issue of said license we think it then devolved upon the defendants to show it.

But it is claimed that Louis was not a grocer, dramshop-keeper, or tavern-keeper, and that his license was not issued to him as such, and for that reason that the license is void. Now it is not shown that Louis was not a grocer, dramshop-keeper or tavern-keeper. It is shown that he was a whole-sale liquor-dealer, but it is not shown that he was not also a grocer, dramshop-keeper, or tavern-keeper. But even if it were shown that he was not a grocer, dramshop-keeper, or tavern-keeper, still we do not think that it would make any difference. The law does not require that a person in order to obtain a grocery license, dramshop license, or tavern license, should actually be a grocer, dramshop-keeper, or tavern-keeper. Any person may obtain such a license, and sell intoxicating liquor under it, whatever his occupation or business may be. We shall therefore decide this case upon

the presumption that Louis followed no occupation or business except that of wholesale liquor-dealer.

The next question is, whether the license itself should upon its face purport to be a grocery license, a dramshop license, or a tavern license. We do not think that it is necessary that it should, in direct terms. If it should be in substance and in fact just what a grocery license, a dramshop license, or a tavern license must necessarily be under the statutes, then we think it would be entirely sufficient as a license. Now a grocery license, a dramshop license, or a tavern license, under the statutes, cannot be anything more or less than a license to sell intoxicating liquors. Therefore, a license which in express terms authorizes the sale of intoxicating liquors will be deemed sufficient. ' The license in this case merely authorized the plaintiff to sell intoxicating liquors *at wholesale.* It might under the statutes have authorized him to sell both at wholesale and retail. But the fact that it did not authorize plaintiff to sell intoxicating liquors at retail, will not, as we think, invalidate the license as a license to sell intoxicating liquors at wholesale. The city council in granting the license were not bound to exercise their whole power in the premises in order to exercise any portion of such power.

But even if this license were technically void, it does not necessarily follow that the plaintiff cannot recover. A party in such a case is debarred from recovering only where he willfully violates the law. Here was no willful violation of any law. The plaintiff innocently believed that he had a good license, and one that would protect him in the sale of liquors at wholesale. If he was mistaken, however, the mistake was probably such a mistake of fact as would excuse him. But the defendants are hardly in such a condition as to demand the most rigid scrutiny into the technical defects of the plaintiff's license. They have no special claims that appeal strongly to men's sympathies. Their virtuous indignation at the wickedness of selling intoxicating liquors at wholesale, under a license technically defective, and their pit-

eous wail for the vindication of violated law, may possibly not be prompted wholly by disinterested motives. If Louis had really violated the law by selling intoxicating liquors without a license, the courts would lend him no aid in recovering for the price of such liquors. But even then the defendants would have no high moral right to refuse to pay for what they had purchased, and used, and promised to pay for. There is no high moral principle, that we are aware of, requiring a retail liquor-dealer to repudiate obligations assumed by him for liquors purchased by him from the wholesale dealer. The wholesale dealer does not in any case sell the liquors to be used as a beverage, except possibly indirectly through the retail dealer himself. The case of *Dolsan v. Hope*, 7 Kas., 161, is good law, but it does not apply to this case. The judgment of the court below must be affirmed.

All the Justices concurring.